UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASSACHUSETTS BRICKLAYERS AND MASONS TRUST FUNDS, On Behalf of Itself and All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>ALCON, INC., THOMAS G. PLASKETT, LODEWIJK J.R. DE VINK, JOAN W. MILLER, NOVARTIS AG, NESTLÉ S.A., DANIEL VASELLA, CARY R. RAYMENT, KEVIN BUEHLER, WERNER J. BAUER, PAUL BULCKE, FRANCISCO CASTAÑER, JAMES SINGH, and HERMANN WIRZ,<br><br>      Defendants. | Civil Action No. 10-civ-172<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  1.  Plaintiff Massachusetts Bricklayers And Masons Trust Funds ("Plaintiff" or the "Massachusetts Bricklayers"), an institutional investor, by its undersigned attorneys, submits this Class Action Complaint on behalf of itself and a class of all other similarly-situated minority shareholders of Alcon, Inc. ("Alcon" or the "Company") against Alcon, the members of Alcon's Board of Directors (the "Board"), Novartis AG ("Novartis"), and Nestlé S.A. ("Nestlé"). Plaintiff bases its allegations on actual knowledge as to its own acts and on information and belief as to all other allegations after due investigation by counsel.

## SUMMARY OF THE ACTION

  2.  This is a class action on behalf of the shareholders of Alcon's publicly-traded securities, all of which are solely traded on the New York Stock Exchange ("NYSE"). This action arises from the now-pending offer (the "Proposed Merger") made by Alcon's controlling shareholders, Nestlé and Novartis, for the approximately 23 percent of Alcon's publicly-traded

shares that they do not currently own. The Proposed Merger seeks to squeeze out Plaintiff and Alcon's other minority shareholders (the "Class") vis-à-vis an unfair process at an unfair price.

3. Specifically, because Alcon is incorporated in Switzerland but its publicly-traded stock trades on the NYSE alone, and because the Proposed Merger is not a tender offer, Novartis has brazenly touted that no law protects the Class, that no law restricts its ability to thrust the Proposed Merger upon the Class, and that it will consummate the Proposed Merger without any regard to the interests of: (a) the Swiss Code of Obligations (*Obligationenrecht*), which codifies the fiduciary duties of Alcon's Board in Article 717 (discussed below); (b) Alcon's Articles of Incorporation, which contain in Article V, Section 5, purported protections for minority shareholders; and (c) the NYSE rules, many of which provide for minority shareholder protection. Essentially, Novartis is treating the Proposed Merger as a transaction above the law. Rather than trying to operate under the proverbial radar, as discussed below, Novartis neither tries to hide its flagrant disregard for the law and best corporate governance practices nor its readiness to decimate the value of the Class's Alcon shares.

4. Novartis started acquiring Alcon securities in April 2008 pursuant to an agreement with Nestlé for approximately 25 percent of Alcon's outstanding stock, as discussed in greater detail below. At the same time, Novartis secured an option, beginning January 1, 2010, to buy Nestlé's remaining 52 percent Alcon stake. On January 4, 2010, Novartis announced that it exercised its option to purchase the approximately 52 percent of Alcon's outstanding shares which are owned by Nestlé at the agreed upon weighted average price of $180.00 per share. Coupled with the approximately 25 percent of Alcon's outstanding shares that Novartis already owns, the option exercise will cause Novartis to become a majority and controlling shareholder of Alcon, with approximately 77 percent of the Company.

5. On the heels of its option exercise, Novartis is seeking to exploit its status to acquire all the Alcon stock that Novartis does not already own for much less than fair value, and for much less than the price Novartis is paying Nestlé for Alcon shares. To wit, on January 4, 2010, Novartis filed a Schedule 13D with the Securities Exchange Commission ("SEC") in which it disclosed that it had entered into an agreement with Nestlé pursuant to which "***Novartis also has the right to direct Nestlé to vote . . . against certain significant transactions submitted to a vote of the shareholders of [Alcon]***." (Emphasis added). Thus, even though Novartis does not currently own Nestlé's Alcon stake, it completely controls Nestlé's ability to vote its Alcon shares in the Proposed Merger. As such, Novartis is already Alcon's de facto majority, controlling shareholder. Likewise, Novartis controls Alcon's Board because its exercise of the option to acquire Nestlé's Alcon shares gives it the right to replace five Nestlé designees on Alcon's Board with five Novartis designees. Accordingly, Novartis controls both the Board and the shareholder vote at Alcon. Novartis is using its de facto status as Alcon's majority and controlling shareholder to ram the Proposed Merger through, thereby depriving Alcon's minority shareholders of fair value for their Alcon stock. The price Novartis aims to pay Alcon's minority shareholders is approximately 18 percent less than the price Novartis is paying Nestlé, based upon Novartis stock's January 6, 2010 closing price.

6. Consequently, the Proposed Merger is the product of a flawed process designed to ensure the sale of Alcon to Novartis on terms detrimental to Plaintiff and the Class. As Alcon's de facto majority shareholder, Novartis is required to establish the entire fairness of any transaction involving the acquisition of Alcon stock it does not already own. The Proposed Merger, however, is the very antithesis of an entirely fair transaction.

7. The Proposed Merger is structurally coercive and is being presented to Alcon

minority shareholders an unfair price. As further set forth below, Plaintiff seeks to enjoin, preliminarily and permanently, the Proposed Merger, or, in the event the Proposed Merger is consummated, recover damages as a result of the violations of law alleged herein.

## JURISDICTION AND VENUE

8.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because complete diversity exists between Plaintiff and each of the Defendants and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9.  The Court has personal jurisdiction over each of the Defendants because each is either a corporation that conducts business in this District or an individual, who is either present in New York for jurisdictional purposes or has sufficient minimum contacts with this District, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because: (a) Defendants are aliens who may be sued in any District; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

11. Plaintiff Massachusetts Bricklayers, an institutional investor, manages approximately $95 million in retirement funds for its pension plan participants and beneficiaries. At all times relevant hereto, the Massachusetts Bricklayers has been, and is, a holder of Alcon common stock.

12. Defendant Alcon is a Swiss corporation and its United States headquarters is

located at 6201 South Freeway, Fort Worth, Texas 76134.  Alcon's stock is traded on the NYSE under the ticker symbol "ACL."  Alcon is the world's leading eye care company, with sales of approximately $6.3 billion in 2008.  Alcon has been dedicated to the ophthalmic industry for 65 years.  Alcon researches, develops, manufactures, and markets pharmaceuticals, surgical equipment and devices, contacts lens solutions, and other vision care products that treat diseases, disorders and other conditions of the eye.  Alcon operates in 75 countries and sells products in 180 markets.

13. Defendant Thomas G. Plaskett ("Plaskett") is a member of Alcon's Board and is controlled by Nestlé, by reason of its majority shareholdings in Alcon, and by Novartis, by reason of the agreements made between Novartis and Nestlé to give Novartis 77 percent of the shares of the Company.  Defendant Plaskett is a citizen of the United States and resides in Texas.

14. Defendant Joan Miller ("Miller") is a member of Alcon's Board and is controlled by Defendant Nestlé, by reason of its majority shareholdings in Alcon, and by Novartis, by reason of the agreements made between Novartis and Nestlé to give Novartis 77 percent of the shares of the Company.  Miller is a citizen of the United States and resides in Massachusetts.

15. Defendant Lodewijk J.R. de Vink ("de Vink") is a member of Alcon's Board and is controlled by Defendant Nestlé, by reason of its majority shareholdings in Alcon, and by Novartis, by reason of the agreements made between Novartis and Nestlé to give Novartis 77 percent of the shares of the Company.  De Vink is a citizen of the United States and resides in Virginia.

16. Daniel Vasella ("Vasella") has served as a Director of Alcon since July 2008.  Vasella was nominated to Alcon's Board by Novartis after Novartis acquired 25 percent of Alcon from Nestlé in 2008.  Vasella is Novartis's Chief Executive Officer.  Reportedly,

Defendant Vasella masterminded the Proposed Merger on behalf of Novartis. Vasella is a citizen of Switzerland.

17. Cary R. Rayment ("Rayment") is the former Chairman, President, and Chief Executive Officer of Alcon. He retired in March 2009. Since that time, Rayment has been the non-executive Chairman of Alcon's Board. He is a resident of Texas.

18. Kevin Buehler ("Buehler") has served as President and Chief Executive Officer of Alcon since April 2009 and as a member of Alcon's Board. Buehler is a resident of Texas.

19. Werner J. Bauer ("Bauer") has served as a Director of Alcon since March 2002. He is one of Nestlé's five nominees to Alcon's Board. Bauer has served as Executive Vice President, Technical, Production, Environment and R&D of Nestlé since May 2002. In February 2007, Bauer was appointed Chief Technology Officer, Head of Innovation, Technology R&D for Nestlé. He is a citizen of Switzerland.

20. Paul Bulcke ("Bulcke") has served on Alcon's Board since May 2008. He is one of Nestlé's five nominees to Alcon's Board. Bulcke has served as a Director of Nestlé and as Nestlé's Chief Executive Officer since April 10, 2008. Bulcke is a citizen of Belgium.

21. Francisco Castañer ("Castañer") is Vice Chairman of Alcon's Board and has served as a Director since July 2001. He is one of Nestlé's five nominees to Alcon's Board. Castañer began his career with Nestlé in 1964 and has since served in various capacities at Nestlé. He is a citizen of Spain.

22. James Singh ("Singh") has served as a Director of Alcon since Novartis first acquired Nestlé's Alcon shares. He is one of Nestlé's five nominees to Alcon's Board. Singh has served as Nestlé's Executive Vice President and Chief Financial Officer since 2008. He is a citizen of Canada.

23. Hermann Wirz ("Wirz") has served as a Director of Alcon since May 2009. He is one of Nestlé's five nominees Alcon's Board. Wirz serves as Nestlé's Chief Accounting Officer. Wirz began his career with Nestlé in 1972 and has since served in various capacities at Nestlé. He is a citizen of Switzerland.

24. Defendants Plaskett, Miller, de Vink, Vasella, Rayment, Buehler, Bauer, Bulcke, Castañer, Singh, and Wirz are referred to herein as the "Director Defendants."

25. Defendant Novartis is a multi-national pharmaceutical company based in Basel, Switzerland. Novartis recorded more than $53 billion in revenues in 2008 and roughly $36.2 billion in sales in 2008.

26. Defendant Nestlé is a multi-national, packaged foods company founded and headquartered in Vevey, Switzerland. Nestlé is listed on the SWX Swiss Exchange and has market capitalization of approximately 87 billion Swiss francs.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action on its own behalf and as a class action on behalf of all minority holders of Alcon stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, or affiliated, with any Defendants.

28. This action is properly maintainable as a class action.

29. The Class is so numerous that joinder of all members is impracticable. According to Alcon's filings with the SEC, 298,648,353 common shares were outstanding as of December 31, 2008.

30. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions

include, *inter alia*, the following:

    (a)    Whether the Director Defendants have breached their fiduciary duties of undivided loyalty, fair dealing, good faith, independence, candor, and due care with respect to Plaintiff and the Class, as a result of the conduct alleged herein;

    (b)    Whether Novartis, as a controlling shareholder of Alcon, has breached its fiduciary duties of undivided loyalty, fair dealing, good faith, and due care with respect to Plaintiff and the Class, as a result of the conduct alleged herein;

    (c)    Whether the Novartis offer fails to represent fair value to Plaintiff and the Class;

    (d)    Whether Plaintiff and the Class will be irreparably harmed if the Proposed Merger is consummated;

    (e)    Whether Alcon and Novartis are aiding and abetting the Director Defendants' breaches of fiduciary duties.

31.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

32.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

33.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the parties opposing the Class.

34.    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with

respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**A.    Alcon's American Roots**

36.    Founded in 1945, Alcon traces its roots back to two pharmacists, Robert Alexander and William Conner, who opened a small pharmacy in Fort Worth, Texas, and combined the first syllables of their last names to create the name Alcon. Alcon was acquired by Nestlé in 1977 for $280 million. Between 1977 and 2002, Alcon operated as a wholly-owned subsidiary of Nestlé.

**B.    Alcon's Initial Public Offering in the U.S.**

37.    In October 2001, Nestlé announced the exploration of an initial public offering of a minority stake in Alcon. On February 22, 2002, Nestlé filed a registration statement in which it preliminarily registered 69,750,000 common shares, approximately 25 percent of Alcon's shares.

38.    On or about March 23, 2002, Nestlé priced the 69,750,000 at $33.00 per share. Thereafter, Alcon's common shares began trading on the NYSE under the symbol "ACL."

39.    As of September 9, 2009, Alcon's publicly-traded shares on the NYSE were held by 694 holders. Of these 694 holders, 520 are U.S.-based. Accordingly, the greater part of Alcon's minority shareholders—here, the Class—are United States citizens. The harm that will be caused by Defendants, should the Proposed Merger be consummated, will be suffered largely in the United States by American shareholders.

**C.    Nestlé's Agreement with Novartis**

40.    On April 7, 2008, Nestlé announced an agreement with Novartis (the "Agreement") to sell 24.85 percent of Alcon's issued and outstanding capital to Novartis for approximately $11 billion in cash—the cash transaction concerned 74 million Alcon shares at a

price of $ 143.1783 per share.

41. Nestlé completed its sale of 24.85 percent of Alcon's issued and outstanding capital to Novartis on July 7, 2008. Thereafter, Nestlé retained close to 52 percent of Alcon's issued capital and continued to fully consolidate Alcon.

42. In addition, pursuant to the Agreement, from January 2010 until July 2011, Novartis had a call option to acquire Nestlé's remaining majority shareholding in Alcon (the "Option Right"). The Option Right is at a fixed price of $181.00 per share.

43. There are no requirements in the Agreement for Novartis to acquire the publicly-traded shares of Alcon.

### D. The Independent Director Committee

44. In December 2008, following Novartis's initial purchase of approximately 25 percent of Alcon from Nestlé on July 7, 2008, the Alcon Board established a standing committee of independent directors (the "Independent Director Committee").

45. The Independent Director Committee's purpose is to protect Alcon's minority shareholders in connection with certain transactions, including related-party transactions between Alcon and its major shareholders. As such, Alcon established certain protections in its governing documents for the benefit of minority shareholders—here, the Class.

46. For example, Article V, Section 5 of Alcon's Articles of Incorporation requires approval by a committee of independent directors (as defined under NYSE rules) in connection with a number of transactions, including the Proposed Merger. Novartis, however, is attempting to circumvent these protections for Alcon's minority shareholders. In fact, on Novartis's January 4, 2010 investor conference call, Novartis explained that if it were unable to obtain the required approval of the Alcon Board and the Independent Director Committee, Novartis would *unilaterally impose* the terms of the Proposed Merger on Alcon's minority shareholders.

47. Further, neither Novartis nor Alcon have stated that only the independent members of Alcon's Board will vote on the Proposed Merger. Indeed, the Schedule 13D filed by Novartis on January 4, 2010 merely states that the Proposed Merger "would require approval by the Boards of Directors of Novartis and Alcon." However, since Novartis controls a majority of Alcon's Board, it can easily coerce Board approval by having the majority of Alcon's Board it controls vote in favor of the Proposed Merger. To protect Alcon's minority shareholders, Novartis should require that *only* independent Board members vote in favor of any transaction.

48. To date, the Independent Director Committee has done nothing to prevent Novartis from submitting a coercive and unfair offer to the Class. The Independent Director Committee is equipped with no procedural safeguards typical in going-private transactions by majority shareholders.

E. **Novartis Exercises Its Option Right**

49. On January 4, 2010, Novartis announced that it exercised the Option Right under the Agreement. Pursuant to the Option Right, as referenced, Novartis purchased approximately 52 percent of Alcon's outstanding shares owned by Nestlé, at a weighted average price of $180.00 per share in cash.

50. As explained above, prior to Novartis exercising the Option Right under the Agreement, Novartis already owned approximately 25 percent of Alcon's outstanding shares. Thus, the Option Right will cause Novartis to become a majority and controlling shareholder of Alcon, owning approximately 77 percent of the Company.

F. **The Proposed Merger**

51. On January 4, 2010, the same day Nestlé and Novartis announced the exercise of the Option Right, Novartis announced that it submitted the Proposed Merger to the Alcon Board, seeking a merger of Alcon with and into Novartis. Novartis is unabashedly attempting to use its

status as a controlling shareholder of Alcon to acquire all the Alcon stock that Novartis does not already own for *much less than fair value* and for *much less than the price Novartis is paying Nestlé* for its Alcon shares.

52.     Pursuant to the Proposed Merger, Alcon's minority shareholders will receive 2.8 shares of Novartis for each share of Alcon owned.  Based on the closing price of Novartis on January 6, 2010, this translates into the minority shareholders receiving only $146.80 per share, which is *18 percent less* than the price Nestlé is receiving for its Alcon shares.

**G.     Defendants Failed to Maximize Shareholder Value**

53.     As a result of Defendants' conduct, the Company's public stockholders have been, and will continue to be, denied the fair process and arm's-length negotiation to which they are entitled.  Defendants failed to account for Alcon's temporarily-depressed stock price due to the 2008 transaction between Novartis and Nestlé, one of the very prompts for Novartis's artificially low proposal to Alcon's minority shareholders.  Likewise, Defendants have failed to secure a fair portion of the extensive merger synergies for the Class that will result once the Proposed Merger is completed.

54.     In order to meet their fiduciary duties, the Defendants are obligated to explore transactions that will maximize minority shareholder value and incorporate all aspects of Alcon's substantial value once merged with Novartis.  The consideration reflected in the Proposed Merger agreement does not reflect the true value of the Company, which was known only to Defendants at the time the Proposed Merger was negotiated and announced.

55.     The Proposed Merger is contingent upon, among other things, approval by the Alcon Board, as well as two-thirds approval by Alcon's shareholders.  However, these provisions do not adequately protect Alcon's minority shareholders because Novartis's exercise of the Option Right under the Agreement allows Novartis to appoint and control a majority of the

members of Alcon's Board.  Moreover, Novartis has the right to vote its shares in favor of the Proposed Merger and has already stated that it intends to do so.  Thus, Novartis can approve any transaction submitted for approval by Alcon's shareholders regardless of the interests or votes of Alcon's minority shareholders.  Further, even if the vote occurs before Novartis "officially" acquires Nestlé's stake, the Agreement gives Novartis the right to control the voting of Nestlé's Alcon shares with respect to the Proposed Merger, as discussed above.

56. With control over Alcon's Board, together with its majority stake in Alcon, Novartis will be able to consummate the Proposed Merger despite the irreparable harm posed to Plaintiff and Alcon's other minority shareholders.  Under such conditions, Novartis should either refrain from voting its shares in connection with the Proposed Merger and subject the vote on the Proposed Merger to a "majority of the minority" provision.

57. The Independent Director Committee, in response to comments made on January 4, 2010 by Novartis, stated its belief that Alcon has established certain important protections for the benefit of Alcon's minority shareholders against a coercive takeover bid and is supposedly disappointed that Novartis is attempting to circumvent such protections and best corporate governance practices.  As stated by the Independent Director Committee, "Novartis appears to be attempting to circumvent the minority protection principles . . . by claiming that the Alcon minority shareholders are neither accorded minority protections under [the applicable law] nor the rules under the NYSE."  Novartis has admitted as much—in the Schedule 13D filed by Novartis on January 4, 2010, Novartis states that "[u]nder Swiss law, Novartis would have the right to vote its [s]hares in favor of the proposed merger."  In addition, the Schedule 13D states that "[i]f the proposed merger is completed, the [s]hares would be eligible for delisting from the NYSE and become eligible for termination of registration pursuant to Section 12 of the

Securities Exchange Act of 1934, as amended." Thus, the Proposed Merger is highly coercive because minority shareholders have no protections and if the Proposed Merger is consummated, there will be no market for the shares.

58.     In addition, pursuant to the Agreement, "[n]either Novartis nor Nestlé are permitted to buy or sell any [s]hares [of Alcon] under the terms of the Purchase and Option Agreement until completion of the Second Stage Acquisition." Clearly, Novartis is paying a control premium to Nestlé and then using its control obtained as a result of Nestlé's Alcon shares to unilaterally impose a significantly lower, unfair price upon Alcon's minority shareholders.

59.     Defendant Vasella has already admitted that he intentionally chose to pay more to Nestlé for its stake to get control: "Vasella is taking a hard stance with the minority shareholders, saying Nestlé deserved a higher price because that stake gave Novartis control of the company." *See* Kerry Capell & Dermot Doherty, "Vasella's Persistence Pays Off for Novartis," *BusinessWeek*, Jan. 6, 2010.

60.     It is extremely unusual and unfair to offer two groups of shareholders two different prices for the same stock. To wit, Professor John Coffee of Columbia University, in response to news of Novartis's offer, has stated: "A simultaneous offer with this much of a disparity between the majority and minority shareholders is quite rare." *See* "Alcon squeeze-out bitter pill for minority holders," *Reuters*, Jan. 5, 2010. Defendants should not be permitted to effectuate such plain unfairness.

### H.     **Defendants Disregard the Swiss Code of Obligations**

61.     In 1992, two chambers of Swiss lawmakers, the National Council and the Council of States, undertook a complete reform of the so-called "Swiss Company Law." The provisions were completely changed with the final law coming into force on July 1, 1992 in the form of the Swiss Code of Obligations 1992 (the "SCO"). The new SCO was hailed and Switzerland was

acknowledged to have taken an early lead in codifying best corporate governance practices.

62. Specifically, and relevant here, SCO Article 717 states that:

1. The members of the board of directors as well as third parties engaged with the management shall carry out their duties with due care and must duly safeguard the interests of the Company.
2. Circumstances being equal, they shall give equal treatment to shareholders.[1]

63. Defendants here have blatantly disregarded the spirit and substance of SCO Article 717. Defendants have therefore violated their fiduciary duties to the Plaintiff and the Class.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty Against the Director Defendants and Novartis

64. Plaintiff repeats and realleges each allegation set forth herein.

65. The Director Defendants and Novartis have violated fiduciary duties of care, loyalty, candor, good faith, fair dealing, and independence owed to Alcon's minority shareholders.

66. By the acts, transactions, and courses of conduct alleged herein, the Director Defendants and Novartis, individually and acting as a part of a common plan, have violated their fiduciary duties to the minority shareholders of the Company.

67. As demonstrated by the allegations above, the Director Defendants and Novartis failed to exercise the care required, and breached their duties of loyalty, good faith, candor, fair dealing, and independence owed to the minority shareholders of Alcon because, among other reasons:

---

[1] Article 717, Volume II – Company Law, Swiss Code of Obligations (English Translation of Official Text, as of January 2005), Swiss-American Chamber of Commerce.

      (a)      They are not independent and are acting out of loyalty to Novartis, not Alcon and its minority shareholders;

      (b)      They are failing to properly maximize the value of Alcon common shares;

      (c)      They ignored or did not protect against the numerous conflicts of interest resulting from their own inter-relationships in connection with the Proposed Merger; and

      (d)      They have abdicated their fiduciary duties.

68.      Because the Director Defendants and Novartis dominate and control the business and corporate affairs of Alcon, and are in possession of private corporate information concerning Alcon's assets (including the knowledge of any other undisclosed bids for the Company), business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and Alcon's minority shareholders.

69.      By reason of the foregoing acts, practices, and course of conduct, the Director Defendants and Novartis have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the Class.

70.      The Director Defendants and Novartis are engaging in self-dealing, are not acting in good faith toward Plaintiff and the Class, and have breached, and are breaching, their fiduciary duties to the Class.

71.      As a result of the Director Defendants' and Novartis's actions, Plaintiff and the Class have been, and will be, harmed.

72.      Plaintiff and the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Against All Defendants For
### Aiding and Abetting Breaches of Fiduciary Duties

73. Plaintiff repeats and realleges each allegation set forth herein.

74. By the acts, transactions, and courses of conduct alleged herein, the Defendants, individually and as part of a common plan and scheme or in breach of their fiduciary duties to Plaintiff and the Class, are attempting unfairly to deprive Plaintiff and the Class of the true value of their Alcon investment.

75. Each of the Defendants was aware of the breaches of fiduciary duty being committed by the other Defendants and gave substantial assistance and encouragement to those defendants. Moreover, the breaches of fiduciary duty committed by the Director Defendants and Novartis advanced Novartis's own financial self-interest. As a result of such breaches, among other things, Novartis is attempting to pay Alcon's minority shareholders less than it has agreed to pay Nestlé for its Alcon shares, and is offering a lower price to acquire the minority shares of Alcon than it would have otherwise offered.

76. By reason of the foregoing acts, practices, and course of conduct, each of the Defendants has aided and abetted the breaches of fiduciary duties committed by the Director Defendants and Novartis.

77. As a result of the actions of the Defendants, and each of them, Plaintiff and the other members of the Class have been damaged.

78. Unless enjoined by this Court, the Defendants will continue to breach their fiduciary duties.

79. Plaintiff and the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Determining that this action is a proper class action maintainable under Federal law, and that Jurisdiction and Venue are proper in this Court and Judicial District;

B. Awarding, against all Defendants and in favor of the Class, the value lost as a result of Defendants' breaches of fiduciary duties;

C. Declaring that the Proposed Merger violates the SCO and Alcon's Articles of Incorporation;

D. Against all Defendants and in favor of Plaintiff and the Class for the amount of damages sustained by them as a result of Defendants' violations of the SCO and Alcon's Articles of Incorporation;

E. Preliminarily and permanently enjoining the Public Offer until such time as the Independent Directors vote to approve it and the consideration to be paid to minority shareholders of Alcon is fair, reasonable, and just in the circumstances;

F. Awarding to the Class restitution from Defendants;

G. Directing the Alcon Board, Novartis, and Nestlé to take all necessary actions to comply with their respective fiduciary duties under applicable law;

H. Awarding Plaintiff and the Class the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

I. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: January 8, 2010

Respectfully submitted,

*[signature]*

Christopher J. Keller (CK-2347)
Alan I. Ellman (AE-7347)
Stefanie J. Sundel (SS-8168)
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Attorneys for Massachusetts Bricklayers and Masons Trust Funds*